**UNITED STATES of America, Appellee,**

v.

**Richard I. KATZ and Richard M. Tilker, Appellants.**

**Nos. 978, 979, Dockets 79–1069, 79–1070.**

United States Court of Appeals, Second Circuit.

Argued May 14, 1979.

Decided June 13, 1979.

Jonathan L. Rosner, Rosner & Rosner, New York City, for appellants.

Peter D. Sudler, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Richard D. Weinberg, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and CARTER, District Judge.*

PER CURIAM:

This is an appeal from judgments of conviction after a jury trial in the United States District Court for the Southern District of New York, William C. Conner, Judge, on one count of conspiring to dispose of stolen bonds in violation of 18 U.S.C. § 371 and one count of aiding and abetting the unlawful concealment, storage, and bartering of the stolen bonds in violation of 18 U.S.C. §§ 2315 and 2. Appellants, who are lawyers, had sought to obtain from the Manufacturers Hanover Trust Company a 10% "finder's fee" for negotiating the return of $490,000 negotiable securities stolen from interstate shipments of the bank.

Appellants complain that the court improperly admitted into evidence certain taped conversations between appellant Katz and a former coconspirator on November 16, 1977, and between both appellants and the former coconspirator on December 1, 1977, arguing that the conspiracy had terminated prior to the conversations. Appellants further argue that the conversations affected not only their convictions on the conspiracy count but on the substantive count as well. For the contention that the conspiracy had terminated, appellants rely on the fact that the coconspirator with whom they spoke had, prior to the dates of the conversations, by his actions frustrated the objectives of the conspiracy and had even been arrested and had become a government agent.

■ There are several answers to this allegation of error, and appellants themselves concede the first one in their brief. They recognize that defense counsel did not object to the receipt into evidence of the taped conversations or request a limiting instruction on the use of the tapes. Absent a showing of plain error, the failure to object at trial to the introduction of evidence, see *United States v. Maultasch,* 596 F.2d 19, 24 (2d Cir. 1979); *United States v. DeFillipo,* 590 F.2d 1228, 1236–37 (2d Cir. 1979), or to the court's instructions, see *United States v. Martinez-Carcano,* 557 F.2d 966, 969 (2d Cir. 1977); Fed.R.Crim.P. 30, will preclude relief on appeal. Fed.R. Crim.P. 52. And a finding of plain error is particularly inappropriate where, as here, a proper objection would have cured the error raised on appeal.

■ There is also a second answer to appellants' allegation of error. Appellants' principal defense was that they were entrapped by the former coconspirator turned government agent; at their request, the court charged the jury on the elements of the entrapment defense. This tactical use of the conversations with the coconspirator is a clear waiver of any objection to the admissibility of the tapes on hearsay grounds. That is to say, urging entrapment on the basis of conversations with the coconspirator is inconsistent with exclusion of the tapes of these conversations as hearsay.

---

* Of the Southern District of New York, sitting by designation.

■ Third, appellants are in fact incorrect in their assertion that the conspiracy ended when the coconspirator acted to frustrate the objectives of the conspiracy or when he was arrested. Although *his* participation may have ended at that point, the conspiracy among the others, especially including the appellants, continued. Appellants produced no evidence of *their* withdrawal from the conspiracy to resell the stolen bonds to the bank, absent which their participation in the conspiracy is presumed to continue until the last overt act by any of the conspirators. *See United States v. Panebianco,* 543 F.2d 447, 453–54 (2d Cir. 1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977). Appellants in fact concede that the record does not indicate the termination of the conspiracy as a matter of law or their withdrawal from the conspiracy. They contend only that the evidence raised an issue of fact of termination on which they entitled to an instruction. But once again, they did not request the instruction.

■ Appellants seem to make the secondary argument on the termination issue that after the coconspirator's arrest and relinquishment of possession of the bonds to government authorities the objective of the conspiracy could no longer be attained. But impossibility is no defense to a conspiracy charge, *see United States v. Rosner,* 485 F.2d 1213, 1229 (2d Cir. 1973), *cert. denied,* 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974), and so again the argument that the entire conspiracy terminated must fail. Had appellants requested an instruction that the coconspirator's statements could not be used against them, they would perhaps have been entitled to it. But they did not request such a limiting instruction, and the possible inadmissibility of the coconspirator's statements, on the ground that he had withdrawn from the conspiracy in no way affects the admissibility of their statements when their participation in the conspiracy continued.

■ Finally, we note that even if the conspiracy had terminated, the declarations of each appellant would still be admissible as an admission. *See Lutwak v. United States,* 344 U.S. 604, 618, 73 S.Ct. 481, 97 L.Ed. 593 (1953); *United States v. Stassi,* 544 F.2d 579, 583 (2d Cir. 1976), *cert. denied,* 430 U.S. 907, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977). As noted above, appellants did not request an instruction limiting the use against them of the coconspirator's statements; nor did they request a limiting instruction on the use against either one of the admissions of the other. We find no error requiring reversal in the admissibility of the taped conversations or the instructions or lack of instructions as to their use.

■ Appellants also argue that there was insufficient evidence that they knew that the bonds were stolen. Appellant Tilker additionally argues that there was insufficient evidence that he participated in the negotiation of the return of the bonds in exchange for a "finder's fee." The Government's proof on these issues included appellants' false exculpatory statements, the tape recordings, the testimony of the coconspirator-informer that he had told appellants that the bonds were stolen and that appellant Tilker had patted him down for a listening device, and appellant Katz's statement to a bank officer that he was suspicious of the bonds because of the large discount at which they were being offered. It also included appellant Katz's false explanation of his business[1] with an investigative officer of the bank; the charade that he played with the officer to the effect that the latter was in the "insurance" business, demonstrating his expressed fear that this officer was wearing a recording device; his fear that the Federal Bureau of Investigation might become involved; and his insistence to the bank on obtaining from it written exculpatory statements covering his law firm. It included the coconspirator's statement that Tilker had telephoned him to say that Tilker had arranged the deal

1. Katz told the investigative officer that a client had offered him two $5,000 bonds in payment of an $8,000 legal fee and that he was concerned because the client was connected with a labor union with "Mafia" connections.

with the bank, as well as the circumstantial evidence as to the value of the bonds allegedly "found" and the discount at which they were being offered to the bank, a discount especially revealing of guilty knowledge as to the matured bonds. The jury could reasonably conclude on the basis of all the evidence that both appellants knew that the bonds were stolen and that appellant Tilker participated in making the arrangements with the bank and was fully aware of Katz's attempts to make those arrangements as well.

Judgments affirmed.