UNITED STATES of America, Appellee,

v.

Alexis MIRANDA–ORTIZ, a/k/a "Alexis Pacheco," Defendant–Appellant.

No. 404, Docket 90–1148.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1990.

Decided Feb. 12, 1991.

Orin S. Snyder, Asst. U.S. Atty., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., John M. McEnany, Asst. U.S. Atty., New York City, on the brief), for appellee.

Arthur J. Viviani, New York City, for defendant-appellant.

Alexis Miranda–Ortiz, Danbury, Conn., filed a brief, pro se.

Before KEARSE, PIERCE and MINER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Alexis Miranda–Ortiz ("Ortiz") appeals from a final judgment of the United States District Court for the Southern District of New York, Michael B. Mukasey, Judge, convicting him on one count of conspiracy to distribute and to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846 (1988); and one count of dis-

tribution of more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) (1988); and 18 U.S.C. § 2 (1988). Ortiz was sentenced principally to two concurrent terms of 151 months' imprisonment and a five-year term of supervised release. On appeal, he contends principally (1) that the conspiracy ended with the withdrawal of a key member prior to the time of Ortiz's involvement; (2) that the evidence at trial was insufficient to connect him with the conspiracy charged; and (3) that his sentence was improperly calculated on the basis of quantities of narcotics distributed prior to his entry into the conspiracy. For the reasons below, we affirm the conviction but remand for resentencing.

## I. BACKGROUND

In November 1988, Ortiz was arrested after he had delivered a one-kilogram package of cocaine to coconspirator Luis Martinez. Ortiz was eventually charged in a July 1989 superseding indictment with distribution of this cocaine, and with conspiracy to distribute more than five kilograms of cocaine from 1985 through the date of the superseding indictment. The November 1988 events and the background of the alleged conspiracy were established at trial principally through the testimony of Martinez, informant George Zlotkiewicz, and several Drug Enforcement Agency ("DEA") agents. Taken in the light most favorable to the government, the evidence showed the following.

### A. The Events

Starting sometime in 1985, Martinez supplied Zlotkiewicz with kilogram quantities of cocaine, which Zlotkiewicz then resold in smaller amounts. By November 29, 1988, Martinez had sold Zlotkiewicz cocaine four or five times, each sale involving approximately one kilogram. Martinez had obtained all of this cocaine from a single supplier, Sergio Gil. In October 1988, unbeknownst to Martinez, Zlotkiewicz sold cocaine to a DEA agent and was arrested. Zlotkiewicz pleaded guilty to a charge of

possession of cocaine with intent to distribute and became a DEA informant.

On November 28, 1988, Zlotkiewicz asked Martinez to sell him another kilogram of cocaine. Martinez responded that he would call his source and try to arrange the sale. After finding that Gil was unable to supply the kilogram that day or the next, Martinez called Ortiz.

Martinez had first met Ortiz at a restaurant gathering with mutual friends in the fall of 1987. During that encounter, the two men used cocaine together, and Ortiz told Martinez that if he ever needed drugs, he should call Ortiz. The two exchanged beeper numbers. In November 1988, Martinez had a chance encounter with Ortiz at a movie theater. Ortiz again mentioned that if Martinez "needed anything," he should contact Ortiz. They exchanged beeper numbers again and traded telephone numbers. During these conversations, no quantities were discussed.

On November 29, 1988, having been unable to fill Zlotkiewicz's order from his usual source, Martinez called Ortiz. The two met, and Martinez asked Ortiz if he could supply a kilogram of cocaine that day, explaining that his normal source was unable to supply it. Ortiz asked "if the person that [Martinez] was getting it for was reliable and if [Martinez] had known him." Martinez replied that he had known Zlotkiewicz "for ... four years, approximately, and that [Martinez] never had any problems with [Zlotkiewicz] as far as he always had the money there." Ortiz agreed to try to obtain the cocaine for Martinez. Martinez gave Ortiz the address of Zlotkiewicz's apartment, so that Ortiz could meet Martinez there with the cocaine.

Ortiz called Martinez later that day and confirmed that he would be able to deliver the cocaine. Martinez went to Zlotkiewicz's apartment building at about 7 p.m., buzzed Zlotkiewicz to say that Martinez was in the lobby and that a friend was bringing the drugs, and then waited in the lobby for Ortiz. Thereafter, a DEA agent observed Ortiz approach the building, enter, and give Martinez a plastic bag. Martinez took the bag to Zlotkiewicz's apartment, where he was arrested. The bag contained approximately one kilogram of cocaine. Ortiz was arrested outside the building as he awaited Martinez's return.

### B. *The Prosecution*

Martinez and Ortiz were indicted in December 1988 on one count of distribution and possession of more than 500 grams of cocaine with intent to distribute, and on one count of conspiracy to distribute and possess with intent to distribute more than 500 grams of cocaine. This indictment alleged that the period of the conspiracy was November 1, 1988, to the date of the indictment. A superseding indictment was filed in July 1989, realleging the distribution count and enlarging the alleged scope and duration of the conspiracy. The new indictment charged that the conspiracy had begun in 1985; it asserted that the object of the conspiracy was distribution of more than five kilograms of cocaine; and it added as overt acts the sales by Martinez to Zlotkiewicz from 1985 through 1988.

Martinez pleaded guilty to the distribution count and agreed to cooperate with the government. Ortiz proceeded to trial and was convicted on both counts. He was sentenced as indicated above, and this appeal followed.

## II. DISCUSSION

Ortiz makes many arguments on appeal, including the contentions (1) that his conviction must be reversed because (a) the alleged conspiracy ended prior to any involvement by him, and (b) the evidence was insufficient to connect him with the long-lived conspiracy alleged in the superseding indictment; and (2) that the district court should not have calculated Ortiz's sentence on the basis of the quantity of cocaine distributed by the conspiracy prior to his involvement. We have considered all of Ortiz's contentions on appeal. Only those described above warrant discussion; only the sentencing contention has merit.

### A. *Conspiracy Issues*

#### 1. Zlotkiewicz's Withdrawal From the Conspiracy

Ortiz contends that the superseding indictment in fact charged a conspiracy quite

limited in scope, whose members were Martinez, Gil, and Zlotkiewicz, and whose sole objective was the supply of cocaine to Zlotkiewicz for redistribution. The argument is that when Zlotkiewicz was arrested and withdrew from the conspiracy, the conspiracy perforce ended; and since this occurred prior to Ortiz's involvement, Ortiz could not have joined this conspiracy. This argument has no merit.

■ The mere withdrawal of one coconspirator from the conspiracy does not terminate the conspiracy when at least two coconspirators remain who have not withdrawn. *See, e.g., United States v. Cruz,* 797 F.2d 90, 98 (2d Cir.1986) ("although [defendant's] arrest terminated his active participation in the conspiracy, it did not terminate the conspiracy itself"); *United States v. Katz,* 601 F.2d 66, 68 (2d Cir.1979) (*per curiam* ); *United States v. Panebianco,* 543 F.2d 447, 453 (2d Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1129, 51 L.Ed.2d 553 (1977). Nor does the fact that the coconspirator who withdrew has become a government informant unbeknownst to the coconspirators prevent the continuation of the conspiracy. Although a person acting as an agent of the government cannot be a coconspirator, *see, e.g., United States v. Goldberg,* 756 F.2d 949, 958 (2d Cir.), *cert. denied,* 472 U.S. 1009, 105 S.Ct. 2706, 86 L.Ed.2d 721 (1985); *United States v. Tombrello,* 666 F.2d 485, 490 n. 3 (11th Cir.), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982); *United States v. Chase,* 372 F.2d 453, 459 (4th Cir.), *cert. denied,* 387 U.S. 907, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967), the presence of a government agent "does not destroy a conspiracy in which at least two other private individuals have agreed to engage in an unlawful venture," *United States v. Goldberg,* 756 F.2d at 958; *see United States v. Elledge,* 723 F.2d 864, 866 (11th Cir.1984). Since the essence of any conspiracy is agreement, rather than the success of the venture, *see, e.g., United States v. Labat,* 905 F.2d 18, 21 (2d Cir. 1990), a defendant may be convicted of conspiracy even if the intended substantive crime could not occur because the person he and his coconspirators thought would

participate in it was actually an agent of the government, *see, e.g., United States v. Goldberg,* 756 F.2d at 958; *United States v. Rose,* 590 F.2d 232, 235 (7th Cir.1978) (fact that defendants' "plan was doomed because they unwittingly chose as their instrumentalities agents of the government is irrelevant to the existence of the conspiracy"), *cert. denied,* 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979); *United States v. Seelig,* 498 F.2d 109, 113 (5th Cir.1974) ("fact that a government informant was to effect the actual distribution of the drug does not extirpate [the defendants'] liability for conspiring to violate the law").

■ In the present case, the superseding indictment alleged that from 1985 to July 1989, Ortiz, Martinez, "and others to the Grand Jury unknown" conspired to violate the narcotics laws. The evidence was ample to support the inference that Martinez and Gil had so agreed and that they persisted, not knowing of Zlotkiewicz's arrest, in their agreement to supply narcotics to Zlotkiewicz for distribution. The fact that Zlotkiewicz had become a government informant and that the conspiracy was therefore doomed to failure was immaterial as a matter of law.

### 2. Knowledge of the Scope of the Conspiracy

The superseding indictment described the alleged conspiracy as one dating back to 1985 and having as its goal the distribution of more than five kilograms of cocaine. Ortiz argues that since he (a) was not part of the earlier operation, (b) did not supply Martinez with cocaine until November 29, 1988, and (c) then supplied only one kilogram, the evidence was insufficient to connect him to the alleged five-kilogram conspiracy. We disagree.

■ In order to prove a defendant's membership in an alleged conspiracy, the government must establish that he "participated in what he knew to be a collective venture meeting the allegations of the indictment." *United States v. Alessi,* 638 F.2d 466, 473 (2d Cir.1980). The government need not prove that he knew all the

members of the conspiracy or all the details of its operation, *see United States v. Feola,* 420 U.S. 671, 692, 95 S.Ct. 1255, 1267–68, 43 L.Ed.2d 541 (1975); *Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256–57, 92 L.Ed. 154 (1947); *United States v. Nusraty,* 867 F.2d 759, 763 (2d Cir.1989); *United States v. Martino,* 759 F.2d 998, 1003 (2d Cir.1985), so long as it proves that the coconspirators agreed on the essential nature of the plan, *United States v. Bagaric,* 706 F.2d 42, 63 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983). Membership in the conspiracy may be proven entirely by circumstantial evidence. *United States v. Labat,* 905 F.2d at 21; *United States v. Martino,* 759 F.2d at 1004; *United States v. Soto,* 716 F.2d 989, 991 (2d Cir.1983).

■ The defendant's participation in a single transaction can, on an appropriate record, suffice to sustain a charge of knowing participation in an existing conspiracy. *See, e.g., United States v. Zabare,* 871 F.2d 282, 287 (2d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989); *United States v. Murray,* 618 F.2d 892, 903 (2d Cir.1980) (a defendant's single purchase of narcotics in 1975, together with other evidence that he had been involved in narcotics trafficking and had previously done business with key coconspirator sufficed to permit conviction of defendant of conspiracy spanning 1972 to 1978); *United States v. Torres,* 503 F.2d 1120, 1123–24 (2d Cir. 1974). The test of whether a single transaction suffices is whether the evidence permits an inference that the defendant had knowledge of the conspiracy and intended to join. *United States v. DeNoia,* 451 F.2d 979, 981 (2d Cir.1971) (*per curiam*). "For a single act to be sufficient to draw an actor within the ambit of a conspiracy to violate the federal narcotics laws, there must be independent evidence tending to prove that the defendant in question had some knowledge of the broader conspiracy, or the single act itself must be one from which such knowledge may be inferred." *Id.; United States v. Nusraty,* 867 F.2d at 763; *United States v. Agueci,* 310 F.2d 817, 836 (2d Cir.1962), *cert. denied,* 372 U.S. 959, 83 S.Ct. 1016, 10 L.Ed.2d 12 (1963).

The evidence in the present case, taken in the light most favorable to the government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469–70, 86 L.Ed. 680 (1942); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (conviction must be upheld against a sufficiency challenge if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original), easily met this test. Ortiz had twice prior to November 29, 1988, offered to supply Martinez with narcotics. Though Ortiz argues that the offer was initiated while he and Martinez were snorting cocaine together, permitting the inference that Ortiz was merely offering to supply Martinez for his personal use, the evidence was that at that time, and later, the two men exchanged beeper numbers. The jury was free to infer that Ortiz would reason that a narcotics purchaser carrying a beeper was likely a distributor, rather than one who purchased only for his own personal use, and that Ortiz sought to become Martinez's partner in an ongoing narcotics operation.

Without doubt it was clear to Ortiz on November 29, 1988, that Martinez was a distributor, as Martinez sought to purchase a whole kilogram and stated that he was unable to obtain the cocaine from his regular supplier. Further, Ortiz quizzed Martinez as to the identity of the purchaser for whom the one kilogram was sought, asking whether Martinez knew the buyer and knew him to be reliable. Martinez's response was that he had known Zlotkiewicz for four years and had always been paid. In seeking information and receiving these assurances, Ortiz gained knowledge of Martinez's past operations and was able to capitalize on their success, in the form of assurance (albeit mistaken), as to the safety of the impending sale.

We conclude that the evidence in the present case was ample to permit the jury to infer beyond a reasonable doubt that Ortiz knew of the ongoing conspiracy and joined it.

## B. *Sentencing*

██ In sentencing Ortiz, the district court concluded that Ortiz's offense level under the United States Sentencing Guidelines ("Guidelines") should be calculated on the basis of the conspiracy's distribution of five or more kilograms of cocaine during the period 1985 through 1988, to wit, the one kilogram distributed by Ortiz on November 29, 1988, plus at least four kilograms distributed by Martinez to Zlotkiewicz prior to that date. Ortiz contends that even if the evidence was sufficient to convict him of the 1985–1988 conspiracy, the amount of narcotics attributable to him for purposes of calculating his base offense level could not properly include the four-to-five kilograms of cocaine distributed by the conspiracy prior to his joining it. For the reasons below, we agree that the record did not support attribution of that total to Ortiz.

The pertinent Guidelines provisions are §§ 2D1.1, 2D1.4, which govern narcotics offenses; 3D1.2(d), which directs the grouping of closely related offenses; and 1B1.3, which gives guidance as to "Relevant Conduct." The base offense level for a narcotics offense is calculated with reference to the quantity of narcotics involved, in accordance with the Drug Quantity Table ("Table") set forth in Guidelines § 2D1.1(c). The Table sets, *inter alia,* a base offense level of 32 for an offense involving at least five, but less than 15, kilograms of cocaine; a base offense level of 30 for an offense involving at least 3.5, but less than five, kilograms of cocaine; and a base offense level of 28 for an offense involving at least two but less than 3.5 kilograms of cocaine.

When a defendant has been convicted of both narcotics distribution and conspiracy to distribute, those offenses are to be grouped together for calculation of a single base offense level. Guidelines §§ 2D1.4; 3D1.2(d). Guidelines § 2D1.4 provides that the offense level for a narcotics conspiracy offense "shall be the same as if the object of the conspiracy ... had been completed." Guidelines § 2D1.4. The commentary to the latter section notes that

[i]f the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale.... If the defendant is convicted of conspiracy, *see* Application Note 1 to § 1B1.3 (Relevant Conduct).

Guidelines § 2D1.4 Application Note 1.

Guidelines § 1B1.3 includes within the category of relevant conduct, for purposes of base offense level calculation, "acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction," *id.* § 1B1.3(a)(1), and, with respect to offenses for which § 3D1.2(d) would require grouping, "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction," *id.* § 1B1.3(a)(2). Application Note 1 to § 1B1.3, which is referred to in the commentary to § 2D1.4, states, in pertinent part, as follows:

In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was *reasonably foreseeable by the defendant.* Because a count may be broadly worded and include the conduct of many participants over a substantial period of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. *Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.*

Guidelines § 1B1.3 Application Note 1 (emphasis added).

The thrust of this commentary is that when a late-comer has been convicted of a broad-ranging narcotics conspiracy, his "relevant conduct" may not be the same as the relevant conduct of those who were members of the conspiracy at all stages. The late-entering coconspirator should be sentenced on the basis of the full quantity of narcotics distributed by other members of the conspiracy only if, when he joined the conspiracy, he could reasonably foresee the distributions of future amounts, or knew or reasonably should have known what the past quantities were. *Accord United States v. Willard*, 909 F.2d 780, 781 (4th Cir.1990) ("A defendant is not necessarily held responsible at sentencing for the entire criminal conduct of the conspiracy. Rather, he is held accountable only for the criminal conduct in furtherance of the conspiracy which was either known to him or 'reasonably foreseeable' by him."); *United States v. Guerrero*, 894 F.2d 261, 266 (7th Cir.1990) (where conspiracy distributed one kilogram of cocaine per year, court properly sentenced defendant on the basis of the amount distributed during the nine months the defendant was a member of the conspiracy).

Here, the superseding indictment alleged a conspiracy that had existed for four years; Ortiz was a member for less than a day. In order to charge Ortiz, for sentencing purposes, with the precise amounts sold by Martinez and Gil during the prior years, the court should have found by a preponderance of the evidence that Ortiz knew or reasonably should have known that Martinez's prior sales to Zlotkiewicz had totaled four or more kilograms. There is, however, no evidence in the record that Ortiz was so informed. When Ortiz and Martinez met in 1987 and by chance in November 1988, there was no discussion of the quantities of cocaine in which Martinez was dealing. Nor was there any testimony that in their brief conversation on November 29, Martinez told Ortiz either how many sales he had made to Zlotkiewicz in the past or what quantities he had sold. It was inferable that there had been two or more sales during the four-year period, and it was inferable that the past distributions had involved more than minimal quantities; otherwise Martinez's statement that he had always been paid would have had marginal relevance. Nonetheless, the vague conversation was equally consistent with sales of quantities of less than a kilogram in each sale, which could easily have brought the total to less than four kilograms, and perhaps less than 3.5.

The district court made no finding as to Ortiz's knowledge of the past amounts sold to Zlotkiewicz. It merely stated that Guidelines § 1B1.3(a)(2) requires that

> quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction,

and pointed out that the jury had found Ortiz guilty of the alleged five-kilogram conspiracy. The jury's verdict was not dispositive, however, for as discussed above (and, indeed, as the court had instructed the jury), the jury was entitled to find Ortiz guilty of conspiracy without proof that he knew the conspiratorial goals or acts in detail. In contrast, in order to calculate his base offense level with reference to the total amount of cocaine distributed by the conspiracy, the court was required by the Guidelines to find that the amounts distributed before Ortiz joined the conspiracy were, or reasonably should have been, known to him. The district court made no such finding, and the present record would not have supported a finding that Ortiz knew or reasonably should have known that the past distributions totaled four or more kilograms.

Accordingly, Ortiz's sentence on both counts must be vacated, and the matter must be remanded for resentencing.

## CONCLUSION

We have considered all of Ortiz's other contentions on this appeal and have found them to be without merit. His conviction is affirmed; the judgment is vacated on both

counts, and the matter is remanded to the district court for resentencing in a manner not inconsistent with this opinion.