951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert BELL and Darrell Peterman, Defendants-Appellants.
 Nos. 91-3210, 91-3211.
 United States Court of Appeals, Sixth Circuit.
 Dec. 20, 1991.
 
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges; and ALLEN, Senior District Judge.*
 PER CURIAM.
 
 
 1
 In these consolidated cases, defendants Robert Bell and Darrell Peterman appeal their sentences following guilty pleas to a single count of conspiracy to possess and distribute cocaine under 21 U.S.C. § 846.[1] For the reasons that follow, we affirm.
 
 
 2
 The issues presented by defendant Bell are (1) whether defendant Bell is accountable for quantities or amounts of cocaine possessed, purchased, and sold by the conspirators prior to his entrance into the conspiracy, and (2) whether the government has sustained the requisite burden of proof establishing that 50 to 150 kilograms of cocaine were attributable to defendant Bell.
 
 
 3
 The issue presented by defendant Peterman is whether defendant Peterman's guideline range should have been calculated based upon conduct which was not reasonably foreseeable by him nor within the scope of his agreement.
 
 I.
 A. Facts
 
 4
 The conspiracy to which the defendants pled guilty commenced on September 19, 1989, according to the indictment. The indictment of twenty-one defendants on forty-three counts alleges criminal acts all related to a large cocaine distribution conspiracy led by Kevin Young and Anthony Haynes in the Youngstown, Ohio, area. According to the indictment, Kevin Young and Anthony Haynes received their multi-kilogram supply of cocaine from the New York City area and then distributed it in multi-ounce loads to defendants Bell and Peterman, among others.
 
 
 5
 At the sentencing hearing, the government presented the testimony of four witnesses: Special Agent H. John Lichtefeld, the F.B.I. case agent; Kevin Young, the leader of the conspiracy; Larry Turner, a co-conspirator; and Detective David Allen of the Mahoning County Drug Task Force. Most of the testimony concerned conversations which the government obtained by wiretapping the telephone of conspirator Young. The wiretap was put in place on December 12, 1989.
 
 
 6
 Incriminating evidence against both defendants was provided by Kevin Young who testified that he had a reputation in the Youngstown area as being a person that can "get rid of drugs fast" and get rid of large quantities of drugs. Young further testified that he had frequently been approached by persons who wanted to sell or buy from him because of his reputation. This claim of reputation was verified by Larry Turner.
 
 1. Defendant Bell
 
 7
 Special Agent Lichtefeld testified that on December 13, 1989, the Federal Bureau of Investigation heard several conversations between Kevin Young and defendant Robert Bell. In the first of those conversations, Young asked defendant Bell if he had his money at home, and Bell told Young that he would have to pick up the money. Young told defendant Bell to pick up the money and that he, Young, "would stop over." Twenty minutes after that conversation, Young called Kim Butler, a young woman who held Young's cocaine supply for him. Young told Butler to bring "seven to his house," presumably seven ounces of cocaine. Less than one-half an hour later, Young called Bell and told Bell to give "her the money" because she was on her way to Young's house. Fifteen minutes after this conversation, Bell called Young to complain that Butler had not arrived and that Bell had "two people waiting on him" and suggested that Young hire new people. Bell again called Young twenty-five minutes later at which time Young told defendant Bell to come to Young's house because he had "them at his house."
 
 
 8
 On December 14, 1989, the conversations between Young and defendant Bell continued. After Bell called Young and asked him "Now?," Young called Larry Turner, a co-conspirator who also stored cocaine for Young, and instructed him to bring a "nine piece white chicken dinner", indicating that nine ounces of cocaine were to be brought to Young's house. Soon thereafter, Bell called Young and Young told Bell that it would be twenty-five minutes, "that it had to come from the other side of town." Before defendant Bell arrived, Young called Bell and told him that there were people at his house and that Bell was to switch packages with Young's cousin who would be sitting on the couch. One of Young's cousins is Larry Turner who, as stated, is a co-conspirator.
 
 
 9
 Two days later, on December 16, 1989, defendant Bell told Young that he had "serious clientele" and that he was not able to keep up with them. After this conversation with Bell, Young called Leon Smith, another co-conspirator, and told Smith to "pick up nine of his shirts," indicating nine ounces of cocaine which were to be brought from Larry Turner's house to Young's house. Smith agreed and twenty minutes later Young called Bell and told him "it would be there in ten minutes and he should come to Young's house."
 
 
 10
 On December 21, 1989, defendant Bell called Young and told him to "call that woman and call [me] right back." Young immediately called Lynna Turner and instructed her to bring him "nine shirts" and within the same minute Young called Bell back and told him that the cocaine would be there in an hour.
 
 
 11
 Other incriminating conversations took place on Christmas Eve when defendant Bell asked Young to "come on with it." Young indicated that he was unable to deliver the cocaine, and Bell agreed to come to Young's home. A few days later on December 29, 1989, Young called Kim Butler and told her he was out of shirts and to bring him "nine shirts." Seventeen minutes later Young and Bell had a conversation wherein Young told Bell to come to Young's house, and surveillance crews spotted a car registered to Denise Bell at Young's home minutes later.
 
 
 12
 Detective David Allen of the Mahoning County Drug Task Force testified that defendant Robert Bell was a well-established cocaine dealer and that Bell continued to deal in cocaine after his indictment in this case. Allen stated that not only was Bell selling cocaine, he also had other persons selling for him in different locations around Youngstown.
 
 2. Defendant Peterman
 
 13
 The evidence against defendant Darrell Peterman showed that he worked in conjunction with his brother, Estill. The F.B.I. intercepted the conversations of Young and Estill Peterman on December 13, 1989, when Estill told Young that he had a customer who wanted "two and he had 900." Young told Estill to bring the $900 to his house and to "ask Darrell what he had," and Estill agreed to call Darrell immediately.
 
 
 14
 Defendant Darrell Peterman himself was first intercepted by the wiretap on December 16, 1989, when he told Young that he had money for Young and would bring Young "seven." Darrell was again heard on the wiretap on December 22, during a three-way call when Young agreed to give $1,500 to Darrell for legal expenses to help an unknown third person who was on the telephone line and who was then incarcerated in the Warren City Jail.
 
 
 15
 On January 3, 1990, both Estill and defendant Darrell Peterman talked with Young who had the call-waiting feature on his telephone. Estill told Young that he had a customer who wanted "three" and that Darrell had money for Young. During that telephone call, Young's call-waiting telephone feature signaled that Young had another call which he answered. The other caller was defendant Darrell Peterman who asked if Young had "re-upped yet." Young told Darrell Peterman that he had not, but that Darrell should bring his money to Young so that Young would have enough. After Darrell Peterman replied that his car was in the shop, Young told him to have Estill pick up the money. Defendant Darrell Peterman agreed and asked Young to send him "six." Young then returned to his original telephone call with Estill and instructed Estill to get the money from defendant Darrell Peterman.
 
 
 16
 Approximately one hour later, defendant Darrell Peterman and Young talked on the telephone at which time Young told Darrell that Darrell had sent "thirty-three" to Young. Darrell Peterman could then be heard talking to another person in the room with him, and he was heard complaining that "Jackie" had miscounted the money. Young told Darrell Peterman that Darrell owed Young "twelve plus twelve," or "twenty-four hundred," and Darrell told Young that he could bring him the "twelve" right away. Young then agreed to give Darrell "nine" when he "gets some."
 
 
 17
 On January 7, 1990, defendant Darrell Peterman and Young discussed the price of an ounce of cocaine at which time Young stated that his going price was "fourteen to fifteen," but Darrell stated that he only charged "thirteen." Darrell Peterman also mentioned that he was broke. Several days later on January 13, 1990, Darrell called Young's house and asked for either Young or Edward Benson but talked to Michelle Roland. Benson was handling Young's cocaine business while Young was away in New York. Benson then called Michelle Roland and told her he had talked to Darrell Peterman.
 
 
 18
 Larry Turner testified that he had met defendant Darrell Peterman once and delivered either six or nine ounces of cocaine to him on Young's instructions. The government argues that this testimony indicates that Darrell Peterman had knowledge of other persons involved in the conspiracy. Further testimony came from special agent Lichtefeld who had discussed defendant Darrell Peterman with an officer of the Trumbull County Drug Task Force, Ed Anthony. One of Anthony's informants had told Anthony that the informant and Darrell Peterman had had conversations concerning the acquisition of kilogram quantities of cocaine. The drug task force in Trumbull County also had an open investigation on both Darrell Peterman and his brother Estill based on complaints of the Petermans' selling cocaine in a sandwich shop.
 
 
 19
 Larry Turner's testimony was that he became involved in Young's cocaine business in the summer of 1989, and that his job was to store cocaine and run errands. Turner testified that he had stored approximately fifty kilograms of cocaine or perhaps a little more at his home. The defendants argue that Turner's testimony is contradictory because at one point he said there had been maybe 50 kilograms, and at another point he said there was a little more than 50.
 
 
 20
 On January 17 and 18, 1990, the Drug Task Force seized approximately 18 to 20 kilograms of cocaine and between $340,000 and $350,000 in cash related to this conspiracy.
 
 B. Procedural History
 
 21
 The government filed its original indictment on February 6, 1990, in the United States District Court. J.A. 2. On April 3, 1990, a superceding indictment was filed which named twenty-one defendants, including defendants Darrell Peterman and Robert Bell. Defendant Peterman was charged in count 1 and in counts 30 and 34 for violation of 21 U.S.C. § 843(b). Defendant Bell was named in counts 1, 10 and 18; counts 10 and 18 charged violations of 21 U.S.C. § 843(b).
 
 
 22
 Defendants Peterman and Bell entered pleas to count 1 on November 19, 1990. The record is not clear as to whether or not defendants Bell and Peterman entered their guilty pleas pursuant to plea agreements.
 
 
 23
 Both defendants were sentenced on February 21, 1991, after the district court conducted a sentencing hearing and heard four witnesses presented by the government. From the record it appears that the defendants in this case did not testify on their own behalf.
 
 
 24
 Defendants Bell and Peterman were sentenced to 151 months, given fines of $50.00 and five years of supervised release. Both defendants were ordered to participate in a treatment program for narcotic addiction or drug dependency, and both defendants had a base offense level of 36 but were given a two-point reduction for acceptance of responsibility.
 
 
 25
 Judgments were entered against defendants on February 28, 1991. Defendants' timely appeals followed.
 
 II.
 A.
 
 26
 Appellate review of a district court's sentence entered pursuant to the sentencing guidelines is provided for in 18 U.S.C. § 3742(e) which states in relevant part:
 
 
 27
 The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
 
 
 28
 See United States v. Tucker, 925 F.2d 990, 991 (6th Cir.1991). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988).
 
 B.
 
 29
 First, we shall address defendant Bell's argument that he is not accountable for quantities and amounts of cocaine possessed, purchased, and sold by conspirators prior to his entrance into the conspiracy. During the sentencing hearing defendant Bell's counsel argued that "[Bell] did not come into this conspiracy until December. There's no question about that." The district court replied that "I think the question really is could he foresee that kind of amount that co-conspirators in this case were dealing with. That's the question this court has to determine, it seems to me, no matter when he came into the conspiracy." The district court went on to find that defendant Bell "at least had, or should have had knowledge that Mr. Young was dealing ... in this kind of amount," viz., between 50 and 150 kilograms.
 
 
 30
 The district court does not expressly say from what particular evidence it derived the 50 to 150 amount. The court simply stated that the amount was based on the evidence that was heard. The evidence of the greatest amount of cocaine came from Larry Turner who testified that from September 1989 until January 17, 1990, he stored approximately 50 kilograms of cocaine at his house for his cousin, Kevin Young. Initially Turner stated the amount as "maybe 50 kilograms," and after the court asked "how much?," Turner stated "a little more, over 50 kilograms." Defendant Bell contends that this amount as well as other amounts involving other defendants was improperly attributed to him because he did not enter the conspiracy until December.
 
 
 31
 Under United States Sentencing Guideline ("U.S.S.G.") section 2D1.1(a)(3), the base offense level is specified in the Drug Quantity Table which provides a base offense level of 36 for 50 kilograms of cocaine or more, the highest base offense level provided for by the table. U.S.S.G. § 2D1.4 provides that the offense level for a narcotics conspiracy offense "shall be the same as if the object of the conspiracy ... had been completed." U.S.S.G. § 2D1.4. The Guidelines state that the conduct that is relevant to determining the applicable guideline range includes "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense...." U.S.S.G. § 1B1.3. Application note 1 for section 1B1.3 states:
 
 
 32
 Conduct "for which the defendant is otherwise accountable," as used in subsection (a)(1), includes conduct that the defendant counseled, commanded, induced, procured, or willfully caused. If the conviction is for conspiracy, it includes conduct in furtherance of the conspiracy that was known to or was reasonably foreseeable by the defendant.
 
 
 33
 U.S.S.G. § 1B1.3, application note 1 (citation omitted) (emphasis added). The Guidelines reiterate the point: "If the defendant is convicted of conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable." U.S.S.G. § 2D1.4, application note 1.
 
 
 34
 The language in the Sentencing Guidelines does not explicitly state that amounts "reasonably foreseeable" may include amounts involved in the conspiracy prior to defendant's entrance into that conspiracy. However, the Sentencing Guidelines imply that any amounts in furtherance of the conspiracy which were reasonably foreseeable may become a basis for the defendant's sentence. Furthermore, in a conspiracy a defendant may be liable for conduct in furtherance of the conspiracy which occurs prior to his entrance into the conspiracy.[2] United States v. Overshon, 494 F.2d 894 (8th Cir.), cert. denied, 419 U.S. 853 (1974); United States v. Cimini, 427 F.2d 129 (6th Cir.), cert. denied, 400 U.S. 911 (1970).
 
 
 35
 Defendant Bell cites Levine v. United States, 383 U.S. 265 (1966) (per curiam), for the conclusion that late joining conspirators cannot be held liable for the prior criminal acts of their co-conspirators. Levine does not stand for this proposition because in Levine the Solicitor General conceded that "an individual cannot be held criminally liable for substantive offenses committed ... before that individual had joined the conspiracy." Id. at 926. The case was not decided on its merits. Likewise, United States v. Carrascal-Olivera, 755 F.2d 1446 (11th Cir.1985), does not support defendant's contention.
 
 
 36
 The Second Circuit in United States v. Miranda-Ortiz, 926 F.2d 172 (2d Cir.), cert. denied, 60 U.S.L.W. 3309 (U.S.1991), stated:
 
 
 37
 The thrust of this commentary is that when a late-comer has been convicted of a broad-ranging narcotics conspiracy, his "relevant conduct" may not be the same as the relevant conduct of those who were members of the conspiracy at all stages. The late-entering co-conspirator should be sentenced on the basis of the full quantity of narcotics distributed by other members of the conspiracy only if, when he joined the conspiracy, he could reasonably foresee the distribution of future amounts, or knew or reasonably should have known what the past quantities were.
 
 
 38
 Id. at 178 (emphasis added). Accord United States v. Willard, 909 F.2d 780, 781 (4th Cir.1990). In Miranda-Ortiz the defendant was a member of the four-year conspiracy for less than a day. Id. at 178. The court found there was no evidence to show "that Ortiz knew or reasonably should have known" about the earlier amounts of cocaine and remanded the case for sentencing. Id. at 178.
 
 
 39
 In this case defendant Bell pled guilty to count 1 of the indictment which stated:
 
 
 40
 From on or about September 19, 1989, up to and including on or about January 19, 1990, ... Robert Bell ... did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree together with other persons ... to possess with intent to distribute, and to distribute, cocaine, a Scheduled II narcotic drug controlled substance, in violation of Title 21, United States Code section 841(a)(1).
 
 
 41
 (Emphasis added.) Given defendant Bell's guilty plea to count 1 and the language of the sentencing guidelines, the district court was correct in determining that the issue was not whether the amount of cocaine was attributable to the conspiracy prior to the defendant's entry into the conspiracy, but whether the amount was reasonably foreseeable by defendant Bell. Thus, we conclude that the district court's finding that 50 to 150 kilograms of cocaine were attributable to defendant Bell is not clearly erroneous.
 
 C.
 
 42
 Defendant Peterman argues that the amount of cocaine in the conspiracy, 50 to 150 kilograms, was not reasonably foreseeable by him and should not have been used to determine his base offense level. Whether the amount of cocaine was reasonably foreseeable by defendant Peterman is a question of fact and will not be overturned by this court without a finding that the district court was clearly erroneous. 18 U.S.C. § 3742(e). The burden was on the government to prove by a preponderance of the evidence that the quantities of cocaine attributable to the conspiracy were 50 to 150 kilograms.
 
 
 43
 Defendant Peterman argues that he can only be said to have been involved in the distribution of 623.7 grams as outlined in the overt acts of the indictment. However, as already noted, in a conspiracy a defendant will be sentenced according to whether the amounts involved in the conspiracy were known to the defendant or reasonably foreseeable. The reasonably foreseeable determination must be based on "some minimal indicium of reliability beyond mere allegation." United States v. Smith, 887 F.2d 104, 108 (6th Cir.1989) (quoting United States v. Baylin, 696 F.2d 1030, 1040 (3d Cir.1982)).
 
 
 44
 The government points to the facts in this case which show that defendant Peterman dealt in a significant amount of cocaine. In order to deal in the amounts Peterman sold, i.e., seven, nine, six or nine ounces, he had to receive those amounts from someone who maintained large inventory. Peterman knew that he could obtain large amounts of cocaine from Young and did so. Given this evidence, we conclude that the district court was not clearly erroneous in finding that the involvement of the conspiracy with 50 to 150 kilograms was reasonably foreseeable by defendant Peterman.
 
 D.
 
 45
 Defendant Bell further argues that the evidence does not support the district court's finding that 50 to 150 kilograms of cocaine were involved in this conspiracy. Defendant Bell notes the inconsistent testimony of Larry Turner that he had stored "maybe 50" kilograms, but that he later said it was "a little more, over 50 kilograms." The district court is the trier of fact and must determine the credibility of witnesses; however, "such testimony, like all evidence considered at sentencing must meet certain standards of reliability." United States v. Reyes, 930 F.2d 310, 316 (3d Cir.1991). The district court found that Turner's testimony was reliable and given the evidence as set forth above, we conclude that the district court's finding was not clearly erroneous.[3]
 
 III.
 
 46
 For the foregoing reasons, we AFFIRM the district court's judgments in all respects.
 
 
 
 *
 Honorable Charles M. Allen, Senior United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 21 U.S.C. § 846 provides:
 Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.
 
 
 [2]
 Admittedly, "the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." United States v. Perrone, 936 F.2d 1403, 1416 (2d Cir.1991). However, the test in sentencing is reasonably foreseeable. Id
 
 
 [3]
 Defendant Bell relies upon United States v. Rivera, 898 F.2d 442 (5th Cir.1990), which is clearly distinguishable from this case