UNITED STATES of America, Appellee,

v.

Luis CRUZ and Rogelio Chacon, Defendants-Appellants.

Nos. 1163, 1225, Dockets 85–1479, 85–1483.

United States Court of Appeals, Second Circuit.

Argued May 6, 1986.

Decided July 31, 1986.

91

Carl H. Loewenson, Jr., Bruce A. Green, New York City, Asst. U.S. Attys., of counsel (Rudolph W. Giuliani, U.S. Atty. for S.D.N.Y.), for appellee.

Lawrence W. Kessler, Hempstead, N.Y., for defendant-appellant Cruz.

Phylis Skloot Bamberger, New York City, of counsel (The Legal Aid Society, Federal Defender Services Unit), for defendant-appellant Chacon.

Before VAN GRAAFEILAND, KEARSE and MINER, Circuit Judges.

MINER, Circuit Judge:

█ Luis Cruz and Rogelio Chacon appeal from judgments of conviction entered following a jury trial in the United States District Court for the Southern District of New York (Goettel, J.) stemming from their involvement in a narcotics distribution operation. Cruz's principal contention on this appeal is that the trial court erred in admitting into evidence the statement of an unindicted co-conspirator, the testimony of the arresting officer that at the time of his arrest Cruz possessed $1,234 in cash and $268 in uncanceled food stamps, and expert testimony by a Department of Agriculture agent that uncanceled food stamps could be used to purchase narcotics.[1] Chacon argues on appeal that the trial court erred in admitting into evidence thirteen vials containing cocaine found on Chacon at the time of his arrest. Finding that none of the arguments made by either of the defendants warrants reversal, we affirm the convictions in all respects.

## I. BACKGROUND

Cruz and Chacon were indicted and charged with conspiring to distribute and to possess with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 846 (Count I), distributing and possessing heroin with intent to distribute it, in violation of 21 U.S.C. §§ 812, 841 and 18 U.S.C. § 2 (Count II), and distributing and possessing cocaine with intent to distribute it, in violation of 21 U.S.C. §§ 812, 841 and 18 U.S.C. § 2 (Count III).

The charges against Cruz and Chacon stemmed from their involvement in a street-level narcotics distribution operation on the morning of September 10, 1985. On that day, shortly after 10:00 a.m., Cruz arrived at the surveilled area, a block on

---

1. Cruz also complains of the prosecutor's use of the phrase "[t]he defense ... has to convince you" in his summation. While this phrasing is indefensible, we will not lightly overturn a conviction solely on the basis of a prosecutor's misstatement in summation. This misstatement was surrounded by statements to the jury, both by the government and by the court, that the burden at all times remained on the government to prove its case beyond a reasonable doubt; a curative instruction by the court was directed specifically toward this misstatement. We conclude that the misstatement, viewed against the entire argument before the jury, did not deprive Cruz of a fair trial. *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985); *United States v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir.), *cert. denied,* ── U.S. ──, 105 S.Ct. 3482, 87 L.Ed.2d 617 (1985).

110th Street between Lexington Avenue and Park Avenue in Manhattan. Cruz approached Chacon on the south side of the block in front of a housing project's community center. They exchanged something and then Chacon knelt down on the porch of the community center and appeared to be counting something. Between 10:00 a.m. and 11:30 a.m., members of the New York Drug Enforcement Task Force ("Task Force") observed what appeared to be narcotics sales taking place between at least four sellers, including Chacon, and various customers. The sellers also included an individual dubbed "Captain America" because of his red, white, and blue attire. After these four sellers made several sales, they exchanged something with an individual believed to be Cruz's middleman, an unidentified, as yet unapprehended, dark-skinned male, who was wearing a short-sleeved, striped shirt. After several exchanges with the sellers, the middleman met with Cruz.

At approximately 11:00 a.m., undercover Detective Melvin Bayne, carrying $150 in pre-recorded "buy money," approached Chacon, who at the time was selling narcotics to another customer. Detective Bayne purchased from Chacon two vials of cocaine closed with blue plastic stoppers. Detective Bayne bought the cocaine with a pre-recorded twenty-dollar bill and received two five-dollar bills from Chacon as change.

Detective Bayne then inquired whether he could purchase some heroin. After Chacon began to ask some other people about obtaining some heroin, Cruz, who was standing nearby, shouted in Spanish "[T]hat man is a cop, don't give him anything." Chacon declined to sell any heroin to Detective Bayne, who then began to walk west on 110th Street, away from the community center.

After Detective Bayne crossed Park Avenue, he was overtaken by the narcotics seller known as Captain America. Captain America told Detective Bayne that he had heard that Bayne was interested in purchasing heroin and that he would see what

he could do for Detective Bayne. Bayne responded that he did not understand why he had been refused heroin, as he previously had bought heroin at that location. Captain America said that Detective Bayne looked too healthy to be a heroin addict and therefore the sellers suspected that he was a police officer. Captain America explained to Detective Bayne that he was a seller for the narcotics operation on 110th Street. He further explained that the "big man" was on 110th Street that day, and that he was careful and did not take chances. After negotiating for the purchase of two glassine envelopes of heroin, Detective Bayne agreed to pay Captain America twenty-five dollars, including a five-dollar tip for Captain America, upon delivery of the heroin. Thereafter, Captain America walked to the community center, returning a few minutes later with two glassine envelopes of heroin. He gave the envelopes to Detective Bayne in exchange for twenty-five dollars, including a pre-recorded twenty-dollar bill.

At approximately 4:30 p.m., Cruz drove away from the area and was followed to Brooklyn by members of the Task Force. As soon as Cruz left 110th Street, the four sellers also left. Police officers arrested Cruz at a traffic light in Brooklyn at approximately 5:00 p.m. At the time, Cruz possessed $1,234, including the pre-recorded twenty-dollar bill with which Detective Bayne had purchased cocaine from Chacon and the pre-recorded twenty-dollar bill with which he had purchased heroin from Captain America. Cruz also possessed $268 in uncanceled food stamps. The next morning, Task Force members arrested Chacon at 110th Street and Lexington Avenue. A search of Chacon uncovered thirteen vials containing cocaine. Small pieces of yellow tape were fastened to the end of each vial.

Cruz called two witnesses who testified to various matters principally relating to Cruz's association with his step-father's grocery store in the Bronx. This testimony apparently was intended to establish that the money and food stamps, which Cruz possessed at the time of his arrest, were

related to the store's operations and were not the proceeds of any illicit activity. In rebuttal, the government called Mark Spaulding, a criminal investigator in the Office of the Inspector General of the United States Department of Agriculture. Agent Spaulding testified that, in his experience, food stamps had been used to purchase narcotics on the street. Agent Spaulding testified that for food stamps to be lawfully deposited in a bank, they must be stamped with the receiving store's authorization number and be accompanied by a redemption certificate. Thus, according to Agent Spaulding, when food stamps are used to purchase narcotics, the seller typically owns or operates a grocery store authorized to accept food stamps or has contacts with such a store.

After trial, the jury returned guilty verdicts against Cruz on the conspiracy and cocaine distribution counts but acquitted him on the heroin distribution count. The jury also found Chacon guilty on the conspiracy and cocaine distribution counts.

This appeal presents essentially four evidentiary issues: *viz.*, whether the district court erred in admitting into evidence (1) the $1,234 in cash and $268 in food stamps found in Cruz's possession at the time of arrest; (2) Agent Spaulding's expert testimony regarding the use of food stamps in narcotics trafficking; (3) Detective Bayne's testimony as to the statements made by Captain America; and (4) the thirteen vials of cocaine found in Chacon's possession at the time of his arrest. Finding these evidentiary objections to be without merit, we affirm the convictions.

## II. DISCUSSION

### A. *Cash and Food Stamps*

Cruz claims it was error to admit into evidence the testimony that he possessed $1,234 in cash and $268 in food stamps at the time of his arrest. In particular, he contends that such evidence of "unexplained wealth" was irrelevant, absent prior proof by the government that Cruz had "no legitimate source" for the cash and food stamps.

■ Initially, we note that determinations of relevance are entrusted to the sound discretion of the trial judge, and his decision will not be overturned unless he has acted arbitrarily or irrationally. *O'Rourke v. Eastern Airlines, Inc.*, 730 F.2d 842, 854 (2d Cir.1984). In this case, the district judge acted well within his discretion.

■ First, the government contends that the cash and food stamps were the proceeds of the narcotics conspiracy in which Cruz participated on the day of his arrest. Significantly, the two pre-recorded $20 bills, which Detective Bayne used to purchase cocaine from Chacon and heroin from Captain America, were found among the $1,234 in Cruz's pockets. In addition, surveillance agents had observed the sellers of narcotics exchange unidentified objects with the suspected middleman, who, in turn, met periodically with Cruz. Certainly, these facts, together with the relatively large amount of "pocket money" found on Cruz's person, indicate that he was the leader of the 110th Street narcotics distribution operation.

Moreover, while the probative value of the mere possession of $1,234 in cash is low, *cf. United States v. Cepeda*, 768 F.2d 1515, 1518 (2d Cir.1985) ($1,151 in cash in an apartment at West 93d Street is not "indicative of very much" in a narcotics case), such possession nevertheless was relevant to whether Cruz was the leader of the narcotics operation, *see* Fed.R.Evid. 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The sole issue in *Cepeda* was whether such evidence was *sufficient* to support a narcotics distribution conviction, not whether it was relevant.

■ Finally, such evidence need not be barred under Fed.R.Evid. 403 on the basis that its probative value is outweighed by the danger of unfair prejudice. In *United*

*States v. Spell,* 789 F.2d 143, 144 (2d Cir. 1986) (per curiam), we recognized that the probative value of the possession of $175 in cash was low, but nevertheless found no error in the admission of such evidence, because the prejudicial effect of possessing such a small amount of money similarly would be very low. As in this case, the defendant in *Spell* presented a plausible explanation for his possession of the cash, thereby further mitigating any possible prejudice. In sum, we cannot say that the trial judge abused his discretion in finding that the prejudicial effect of admitting the evidence of the money and food stamps in Cruz's possession did not outweigh its probative value.

### B. *Expert Testimony*

Cruz argues that the district court erred in permitting Agent Spaulding to testify as an expert regarding the food stamp program and the use of food stamps in narcotics sales. We find this argument to be without merit.

■ A trial judge has broad discretion in determining whether to admit expert testimony under Fed.R.Evid. 702, and his decision will be sustained unless manifestly erroneous. *United States v. Khan,* 787 F.2d 28, 34 (2d Cir.1986) (citing *United States v. Young,* 745 F.2d 733, 760 (2d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985)). Moreover, it is well-established that the operations of narcotics dealers are a proper subject for expert testimony under Fed.R.Evid. 702. *E.g., Khan,* 787 F.2d at 34; *United States v. Ginsberg,* 758 F.2d 823, 830 (2d Cir.1985).

■ In this case, the district judge properly permitted Agent Spaulding to describe the operation of the food stamp program and to testify that food stamps had been used in the past to purchase narcotics. Cruz does not challenge Agent Spaulding's qualifications as an expert. Consequently, since the jurors could not be expected to know the procedures to be followed for the stamps to be legally accepted by a bank or used to purchase narcotics, the require-

ments of Rule 702 were satisfied. The testimony clearly was relevant to support the inference that Cruz acquired the food stamps through the sale of narcotics.

■ It should not have been excluded because no witness testified that he actually saw a customer purchase narcotics with food stamps from one of Cruz's sellers. If such testimony had been available, there would have been no need for the expert testimony and the trial judge might have excluded it as cumulative. Nor should Agent Spaulding's testimony have been excluded because he did not opine that Cruz obtained the food stamps in exchange for narcotics. Such expert testimony is not admissible under our holding in *United States v. Brown,* 776 F.2d 397, 401 (2d Cir.1985), that an expert should not be permitted to testify that the defendant's actions fit a pattern of conduct which the expert had observed in prior narcotics investigations. In sum, there simply is no basis to conclude that the district court's decision to admit Spaulding's testimony was manifestly erroneous.

### C. *Co-conspirator Statements*

■ Cruz asserts that the statements of Captain America made just prior to the sale of heroin to Detective Bayne were admitted in violation of the hearsay rule. Cruz maintains that the statements do not fall within the co-conspirator exception to the definition of hearsay, Fed.R.Evid. 801(d)(2)(E), because at the time they were made, Captain America was involved in a criminal transaction that Cruz had specifically rejected. Consequently, Cruz contends, the statements were not "in furtherance of the conspiracy" with which he was charged.

Clearly, absent Cruz's instruction to everyone within earshot on 110th Street not to sell heroin to Detective Bayne, Captain America's statements regarding the narcotics operation and his role therein would have been "during the course and in furtherance of the conspiracy" to distribute narcotics for Cruz and therefore not hear-

say. *See* Fed.R.Evid. 801(d)(2)(E); *United States v. Stratton,* 779 F.2d 820, 825, 829 (2d Cir.1985); *United States v. Cambindo Valencia,* 609 F.2d 603, 632 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980); *United States v. Knuckles,* 581 F.2d 305, 313 (2d Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978). Thus, the precise issue before us is whether Cruz's statement that nothing should be given to Detective Bayne placed Captain America's subsequent dealings with Bayne outside the scope of the conspiracy. We believe Cruz's statement did not have that effect.

Cruz's argument ignores the crucial fact that Captain America sought to sell heroin to Detective Bayne not only to obtain a five-dollar personal cut, but also to receive his usual payment for selling twenty dollars worth of heroin for Cruz. Significantly, the pre-recorded twenty-dollar bill Detective Bayne had given to Captain America was found in Cruz's possession immediately after he left 110th Street. This fact demonstrates that the statements made to Detective Bayne to induce him to purchase heroin were "in furtherance" of the conspiracy to which Cruz was a party. *See United States v. Gleason,* 616 F.2d 2, 17 (2d Cir.1979) (a conspiracy exists, and may therefore be furthered, when illegal acts occur that are "reasonably akin to the anticipated illegality," albeit "not specifically contemplated by an individual conspirator"), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980). Indeed, the central objective of the subject conspiracy—to sell narcotics for Cruz—was demonstrably furthered by Captain America's statements, notwithstanding Cruz's apparent "affirmative act of withdrawal." *Stratton,* 779 F.2d at 829.

**2.** The government raises rule 804(b)(3) as support for the admission of Captain America's statements for the first time on appeal. Contrary to Cruz's position, we may uphold the admission of these statements on any theory which finds support in the record, regardless of the ground relied on by the trial court. *United States v. Lieberman,* 637 F.2d 95, 103 n. 11 (2d Cir.1980).

Furthermore, Captain America's statements to Detective Bayne, even if hearsay, were admissible as statements against interest under Fed.R.Evid. 804(b)(3).[2] All of the requirements of rule 804(b)(3) were met here: Captain America, the declarant, was unavailable as a witness; his description of the 110th Street narcotics operation and his role therein were against his penal interest; and corroborating circumstances indicate that the statements were trustworthy. In particular, his statement that the "big man," presumably Cruz, was on the street tended to subject him to criminal liability for conspiracy to distribute narcotics in addition to liability for distribution of narcotics. Accordingly, we hold that the district court did not err in allowing Detective Bayne to testify as to the statements made by Captain America.

### D. *Thirteen Vials of Cocaine*

Chacon's sole contention on appeal is that the district court erred in permitting the government to introduce into evidence the thirteen vials of cocaine found in his possession at the time of his arrest. The district court found that Chacon's possession of the cocaine was admissible, both as an additional act in furtherance of the conspiracy charged in Count One, and as a similar act under Fed.R.Evid. 404(b) to rebut Chacon's argument that the government arrested and prosecuted the wrong person.

Chacon maintains that the district court erred when it permitted the jury to consider Chacon's possession of the cocaine on September 11th as an overt act committed in furtherance of the conspiracy because the conspiracy necessarily terminated at 5:00 p.m. on September 10th when Cruz was arrested.[3]

**3.** Judge Goettel charged the jury as follows:
You may consider that evidence of Chacon's alleged possession of 13 vials of cocaine, if you find that to be the fact, as an overt act in furtherance of the conspiracy against either or both defendants, Cruz or Chacon, only if you find that such act in fact did occur during and in furtherance of the charged conspiracy,

■ Chacon's argument overlooks a number of significant facts. First, Cruz was arrested in Brooklyn, not on 110th Street in view of his co-conspirators, and there is no evidence that Chacon learned about Cruz's arrest before his own arrest the next morning. Equally pertinent, the indictment charged Cruz and Chacon with a conspiracy that began on or about September 1, 1985 and continued until the filing of the indictment, September 20, 1985. Consequently, the district judge did not abuse his discretion in permitting the jury to consider Chacon's possession of cocaine on the 11th as being in furtherance of the conspiracy to sell narcotics for Cruz. Furthermore, although Cruz's arrest terminated his active participation in the conspiracy, it did not terminate the conspiracy itself or Chacon's participation therein. *See United States v. Testa*, 548 F.2d 847, 852 (9th Cir.1977). Indeed, we have held that a conspirator who has been arrested remains responsible for acts committed in furtherance of the conspiracy by co-conspirators who are still at large. *United States v. Bennett*, 409 F.2d 888, 893–94 (2d Cir.), *cert. denied*, 396 U.S. 852, 90 S.Ct. 117, 24 L.Ed.2d 101 (1969). Chacon offered no evidence of his own withdrawal from the conspiracy to sell narcotics for Cruz, "absent which [his] participation in the conspiracy is presumed to continue until the last overt act by any of the conspirators." *United States v. Katz*, 601 F.2d 66, 68 (2d Cir.1979) (per curiam). Finally, even if the conspiracy had terminated upon Cruz's arrest, the thirteen vials of cocaine would nonetheless have been admissible as probative of the existence of the conspiracy or Chacon's participation therein. *See Lutwak v. United States*, 344 U.S. 604, 617–19, 73 S.Ct.

481, 489–90, 97 L.Ed. 593 (1953); *United States v. Lopez*, 584 F.2d 1175, 1179 (2d Cir.1978); *United States v. Nathan*, 476 F.2d 456, 459–60 (2d Cir.), *cert. denied*, 414 U.S. 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973).

■ The thirteen vials also were admissible as similar act evidence under Fed.R. Evid. 404(b) and 403 to rebut Chacon's argument of mistaken identity. *United States v. DiGeronimo*, 598 F.2d 746, 753 (2d Cir.), *cert. denied*, 444 U.S. 886, 100 S.Ct. 180, 62 L.Ed.2d 117 (1979). During the trial, Chacon's attorney cross-examined the government's witnesses in a manner to suggest that Chacon was not the individual who sold cocaine to Detective Bayne on 110th Street on September 10th. Chacon's attorney also explicitly proffered this argument to the jury during his opening statement and summation. However, Chacon's possession of thirteen vials of cocaine when arrested on 110th Street certainly tends to show that he was the same individual who sold similar vials of cocaine to Detective Bayne the day before at the same place. Chacon's argument that the thirteen vials were not identical to the two vials sold to Bayne goes only to the strength of the evidence, not its relevance.[4] The trial judge determined that the probative value of the evidence of Chacon's possession of the thirteen vials outweighed any possibility of prejudicial effect from its admission. In his charge, the trial judge instructed the jury that it could consider Chacon's possession of the thirteen vials of cocaine on the 11th "for the specific limited purpose of determining the identity of the person who sold cocaine to [Detective Bayne] on the previous day." The trial judge's determination was not a clear abuse of discretion.

and that the particular defendant against whom you are then considering it was at the time the act occurred still a member of the conspiracy. In that regard as to defendant Cruz you should be aware that he was arrested the evening before this alleged act and the arrest of a defendant is generally indicative of the termination of his participation in the conspiracy although you are not required to find that to be the case if you find that the evidence shows facts or reasonable inferences from the facts to the contrary.

4. Although the 13 vials themselves were identical to the two vials sold to Detective Bayne the previous day, the vials sold on the 10th were closed with blue stoppers whereas the 13 vials were closed with yellow tape. In addition, the chemist's report indicated that the weight of the contents of the 13 vials differed from the weight of the contents of the two vials purchased by Detective Bayne.

*See United States v. Martino,* 759 F.2d 998, 1005 (2d Cir.1985); *United States v. Pedroza,* 750 F.2d 187, 201 (2d Cir.1984).

## III. CONCLUSION

Accordingly, finding that none of appellants' evidentiary arguments warrants reversal, we affirm the judgments of conviction.