Peter S. KNUDSEN, Jr.,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 1623, Docket 91–6127.

United States Court of Appeals,
Second Circuit.

Argued May 27, 1992.

Decided June 10, 1992.

Sherin V. Reynolds, Boca Raton, Fla., for plaintiff-appellant.

Jordan L. Glickstein, Tax Div., U.S. Dept. of Justice, Washington, D.C. (James A. Bruton, Gary R. Allen, David English Carmack, Albert S. Dabrowski, on the brief), for defendant-appellee.

Before: MINER, and WALKER, Circuit Judges, and POLLACK, District Judge.*

MILTON POLLACK, Senior District Judge:

A corporate officer claims to have deposited two checks in payment of Federal Insurance Contributions Act ("FICA") taxes for the corporation into a federal depository account authorized to receive such deposits for the Internal Revenue Service ("IRS"). The depository account was with the same bank on which the checks were drawn. There were sufficient funds in the corporation's commercial checking account to cover the two checks deposited in the IRS depository account. A few days after the second deposit, the corporation filed for bankruptcy under Chapter 11 and the bank, that same day, allegedly reversed its credit of both checks to the depository account, applied the amount thereof towards repayment of a commercial bank loan to the corporation, and effectively "bounced" the checks.

The IRS, in a suit against it for an alleged overpayment of $359.92 by the corporation of 1985 FICA taxes, asserted a penalty counterclaim for $9,003.83 against a "responsible" corporate officer in charge of finances when the taxes were allegedly due and not paid. The district court barred evidence that an alleged deposit to cover taxes due for an earlier period had been made in the depository account, and that the credit therefor had been withdrawn by the Bank and used to reimburse itself on an outstanding loan to the corporation. Following a jury trial before Chief Judge Ellen Bree Burns, judgment was rendered for the United States on the government's counterclaim. We hold that it was reversible error to preclude evidence on the counterclaim intended to show payment into the federal depository account of taxes claimed herein, and that the judgment should be vacated and the case remanded.

## I. BACKGROUND

Starting in 1932, the Knudsen family had operated a dairy (the "Corporation"). Peter Knudsen, Jr. ("Knudsen") was Chief Operating Officer of the Corporation at the time relevant to this claim. As such, he was a "responsible person" liable for penalties under 26 U.S.C. § 6672(a) for the Corporation's failure to pay FICA taxes. The Corporation had maintained both a federal depository account under 26 U.S.C. § 302(c) and a general checking account with American National Bank ("Bank"). The Corporation regularly wrote checks from its checking account for FICA taxes for the Corporation employees and deposited them in the depository account. The Corporation also had an outstanding commercial loan from the Bank. During the 1970s, the Corporation began to experience financial

* The Hon. Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

difficulties. According to Knudsen, during the weeks of September 13, 1979, and September 22, 1979, the Corporation had deposited two checks of $4,000 each into the federal depository account in payment of FICA taxes. On September 28, 1979, the Corporation filed for Chapter 11 bankruptcy. Allegedly, at the end of that day, an employee at the Bank backdated a debit to the Corporation's general checking account, for which no Corporation authorization was shown, and took $12,400 from the account as partial payment for the outstanding $16,867 loan from the Bank to the Corporation. Knudsen claims that the Corporation had been making timely payments on the loan, but the Bank was fearful that it would not be able to collect the balance of its loan because of the automatic stay in the bankruptcy. The two $4,000 checks previously deposited into the depository account were treated as not having been paid to the depository account, but as having "bounced" in the commercial checking account for insufficient funds.

On June 27, 1987, the IRS advised the Corporation that it was assessing a penalty against Knudsen for $9,363.75 for failure to pay FICA taxes.[1] On February 22, 1988, Knudsen paid $359.92 to the IRS for taxes owed for the third quarter of 1981, and on the same day filed a refund for that amount. The IRS disallowed that claim on April 1, 1988. On April 11, 1988, Knudsen filed a suit in the District of Connecticut against the IRS, demanding a refund of the $359.92 plus interest. The IRS answered the complaint, admitted that the $359.92 had been paid,[2] and counterclaimed for $9,003.83 plus interest, as if no deposit of the $8,000 had been made in 1979 into the federal depository account prior to the Corporation's bankruptcy.

On April 11, 1990, the district court held a pre-trial conference and ordered Knudsen to file a motion for summary judgment.

The court heard oral argument on the motion on October 15, 1990, and on January 2, 1991, the motion was denied. The only issue that Knudsen presented in his motion for summary judgment was a challenge to whether Knudsen was a "responsible person" under the Internal Revenue Code, an issue he has now conceded.[3] The court ruled in its order that any issues not raised in Knudsen's motion for summary judgment were "abandoned," that the court would not consider them, and that Knudsen was "precluded from raising these issues at trial." Knudsen did not present for adjudication in the summary judgment papers his claim that the Bank had applied the money represented by the $8,000 deposit in the tax depository account and paid itself with that money from the checking account, which made the checks previously deposited in the depository account bounce.

Before the trial, Knudsen submitted a memorandum to the court stating that John Duffy, comptroller for the Corporation, had deposited taxes in the depository account and that "American National Bank used the money that was deposited to the depository account for the withheld income and social security taxes to offset a loan that was outstanding which was not in default." Knudsen stated that, to meet the IRS penalty claim that he failed to pay FICA taxes, he was "entitled to prove that his actions were not willfull [sic]. To prevent him from doing so is prejudicial and erroneous," he said.

At the trial, Knudsen attempted to submit testimony from Duffy that $8,000 had been paid for FICA tax liability and that the Bank had improperly removed this money from the federal depository account. Duffy had become comptroller on September 10, 1979, and supervised the payroll and accounting departments. Knudsen also attempted to submit testimony from Margaret Eureka, security manager for the

---

**1.** This figure represented penalties for taxes for the first and third quarters of 1979, the third quarter of 1981 and the fourth quarter of 1985.

**2.** The parties later stipulated at trial that Knudsen had paid this sum.

**3.** The question of whether Knudsen was a "responsible person" under the Internal Revenue Code was disputed below and in the first set of briefs on appeal. Knudsen, however, conceded the issue in his reply brief, and it is not now before the Court.

Bank, concerning the Bank's conduct. Knudsen was not permitted to present any evidence from these witnesses or documentary evidence the Corporation had paid claimed taxes into the federal depository account at the Bank, which would have offset the IRS counterclaim in suit.

After the close of evidence but before the attorneys made their closing statements, counsel for Knudsen moved for a mistrial and asked the court to consider a 1978 Revenue Ruling, which held that a payment to a depository IRS account cannot be negated simply by fraud, embezzlement or bankruptcy of the depository bank. The court had been asking Knudsen's counsel throughout the pendency of the case to "provide the Court with some authority in connection with depository accounts and in connection with the payment of checks." (App. at 218).[4] The IRS strongly objected to consideration by the court of the Revenue Ruling and was sustained. The district judge said she was not at all sure that fraud or embezzlement had occurred, and that since the factual predicate of a deposit of the $8,000 was barred from evidence for the jury, as a matter of law, notice could not be taken of the Revenue Ruling. The motion for a mistrial was denied.

After a three-day trial, the jury issued a verdict for the IRS on its counterclaim. Knudsen appeals from the judgment entered on the verdict.

## II. ANALYSIS

The primary question before this Court is whether the district court committed reversible error in barring testimony that was proffered to demonstrate, in defense to the IRS counterclaim, that the Corporation's taxes were not unpaid, as claimed by the IRS.

### A. The Deposits Were Effective When Made

■ "Funds deposited at a staffed facility ... are considered deposited when they are received at the staffed facility." 12 C.F.R. § 229.19(a)(1) (1992). Not only are these sums considered deposited, federal regulations require that "[a] depositary bank shall make funds deposited in an account by check available for withdrawal not later than the business day after the banking day on which the funds are deposited, in the case of—(vi) A check deposited in a branch of the depositary bank and drawn on the same or another branch of the same bank if both branches are located in the same state or the same check processing region." 12 C.F.R. § 229.10(c) (1992).

A "taxpayer's deposit of FICA, FUTA, and withheld income taxes in an authorized bank" acting as a depository for the IRS "is treated as a payment of such taxes to the United States Treasury," even though the deposits to the depository account "were not received by the Department of the Treasury because of fraud, embezzlement or bankruptcy of the bank." Rev. Rul. 78–244.

The deposits to the federal depository account that the Corporation sought to establish were made by checks drawn on sufficient funds in the general checking account in the same Bank. Thus, deposit of these checks represented an immediate cash credit in the depository account, effective when made. *See* Clark, *The Law of Bank Deposits, Collections and Credit Cards* ¶ 6.18[1], at 6–104, ¶ 6.06[4][f], at 6–48, ¶ 6.07[13], at 6–28 (3d ed. 1990); Chafee, *Brannan's Negotiable Instruments Law, Ann.* § 132, at 824 (4th ed. 1926).

The alleged proof of the Bank's disregard of the cash credit arising in the depository account, and the alleged proof that the funds represented by the checks were used by the Bank to pay itself on a Bank loan, causing the tax deposits to appear to bounce, was highly relevant to whether there were willfulness and nonpayment. *See also Slodov v. United States*, 436 U.S. 238, 254, 98 S.Ct. 1778, 1788–89, 56 L.Ed.2d 251 (1978) ("The fact that the provision [26 U.S.C. § 6672] imposes a 'penalty' and is violated only by a 'willful failure' is itself strong evidence

---

**4.** Citations to "App.—" refer to pages in the Appendix.

that it was not intended to impose liability without personal fault.").

The IRS contends that Revenue Ruling 78–244 does not apply to this case because "the requirements for making the deposits were admittedly not properly met." (Appellee's Br. at 40). This contention rests on the absence of some documentary proof of the deposit. Duffy stated in the offer of proof on the record that he no longer had the 1979 tax deposit slips for the $8,000. The IRS apparently concluded that he could not claim to have made the deposit without producing a receipt therefor. The IRS cited as its support the following requirement:

> Each remittance of amounts required to be deposited under paragraph (a)(1) [describing time and amount of FICA deposits in depository accounts] of this section shall be accompanied by a Federal Tax Deposit form. Such form shall be prepared in accordance with the instructions applicable thereto.

26 C.F.R. § 31.6302(c)–1(a)(2)(i). However, Duffy also testified (in the offer of proof made in the absence of the jury) that the two checks deposited into the depository account, in fact, were delivered to the Bank, one on September 27 and one between September 20 and 22. (App. at 146–47, 150). He testified that he obtained copies of the debits to pay the Bank loan which "were put through sometime after the close of business on the 28th" of September. (App. at 155).

The failure to produce the deposit form does not bar evidence of actual deposit; the jury should have been given the opportunity to evaluate the factual evidence which Knudsen sought to introduce, and decide for itself whether the Corporation had made the deposit.

**B. Knudsen Did Not Waive His Right to Prove Payment into the Depository Account**

■ The district court barred the opportunity to prove the alleged payment on the notion that the court had ruled that the issue had been waived by Knudsen's failure to present that theory on his motion for summary judgment.

■ "Decisions as to the relevancy and cumulativeness of evidence are generally left 'to the sound discretion of the trial judge, and [her] decision will not be overturned unless [s]he has acted arbitrarily or irrationally.'" *Enercomp, Inc. v. McCorhill Publishing, Inc.*, 873 F.2d 536, 542 (2d Cir.1989) (quoting *United States v. Cruz*, 797 F.2d 90, 95 (2d Cir.1986)). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. When critical evidence that could enable a party to meet its burden of proof is precluded as irrelevant, and a jury is not given the opportunity to put all the pieces of a story together, that decision is arbitrary and an abuse of discretion. *Enercomp*, 873 F.2d at 544–55.

The district court seemed to believe that because the Bank could also be a responsible person under 26 U.S.C. § 6672 without exempting Knudsen from liability as a responsible person, any conduct by the Bank was irrelevant. This reasoning only addresses the "responsible person" question, merely one of two prongs to the legal test, which requires the person assessed to be a "responsible person" who also willfully failed to pay taxes. It ignores the law governing what is actual payment or willful non-payment of the taxes.

Knudsen's payment theory was not untimely. The facts underlying the Bank's conduct and this theory were well-known to the government in advance of the trial. The IRS interviewed and subpoenaed Duffy; government attorneys were present at Eureka's deposition; the pre-trial conferences, memoranda and briefs discussed the issue of what seemed to be misappropriation of depository funds to reduce a Bank loan to the depositor, and the court was furnished with Knudsen's memorandum of law, a copy of which was served on the IRS before the trial began, which discussed the deposit of the two checks into the depository account. In an off-the-record colloquy

with the court shortly before the trial, counsel for Knudsen reiterated that the Corporation

> did everything they possibly could to pay that tax by putting it into the depository account but the bank went into the depository account and retrieved the money out and put it back into the general account and then bounced the check for the depository account.

(App. at 5).

Revenue Ruling 78–244 demonstrates that the evidence in Knudsen's case that explained the Bank's actions was critical to the question of payment. Yet the district court refused to consider the Ruling because, ostensibly, it was submitted too late. (App. at 222–24). The case had not yet gone to the jury when Knudsen presented the Revenue Ruling.

"[T]he Government is entitled … only to one satisfaction of the payroll tax liability …" *Gens v. United States,* 615 F.2d 1335, 1339, 222 Ct.Cl. 407 (1980). The district court's ruling might have resulted in two.

## III.   CONCLUSION

The amended judgment is vacated and the case is remanded for a new trial.