108 F.3d 1370
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Horacio Davila MORENO a/k/a Joe; John Peretta a/k/a "Johnny
Goo", Defendants,
Hector PEDRAZA; Frank Digiovanni a/k/a "Frank D"; Stanley
Miller, Defendants-Appellants.
 Nos. 95-1440(L), 95-1460, 95-1515, 95-1560.
 United States Court of Appeals, Second Circuit.
 March 24, 1997.
 
 1
 Appearing for Appellant Hector Pedraza: B. Alan Seidler, Nyack, New York.
 
 
 2
 Appearing for Appellant Frank DiGiovanni: Cheryl J. Sturm, West Chester, Pennsylvania.
 
 
 3
 Appearing for Appellant Stanley Miller: Thomas F. Liotti, Garden City, New York. Appearing for Appellee: Jonathan S. Sack, Assistant United States Attorney, Eastern District of New York, Brooklyn, New York.
 
 
 4
 Before FEINBERG and WINTER, Circuit Judges, and POLLACK, District Judge.*
 
 
 5
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued.
 
 
 6
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed.
 
 
 7
 Hector Pedraza, Frank DiGiovanni, and Stanley Miller appeal from convictions and sentences imposed by Judge Nickerson after a jury trial. Pedraza was convicted of conspiracy to distribute and possess with intent to distribute cocaine and marijuana between January 1992 and April 1993, in violation of 21 U.S.C. § 846, and of distribution and possession with intent to distribute cocaine and marijuana on or about May 2, 1992 and May 5, 1992, in violation of 21 U.S.C. § 841(a)(1), and of use of a telephone in furtherance of the distribution of cocaine, in violation of 21 U.S.C. § 843(b). Judge Nickerson sentenced Pedraza to 188 months imprisonment, five years supervised release, and a $150 special assessment. DiGiovanni was convicted of conspiracy to distribute and possess with intent to distribute cocaine and marijuana between January 1992 and April 1993, in violation of 21 U.S.C. § 846, and of attempt to distribute and possess with intent to distribute cocaine on or about November 18, 1992, in violation of 21 U.S.C. § 846. DiGiovanni was sentenced to 135 months imprisonment, five years supervised release, and a $100 special assessment. Miller was convicted of conspiracy to distribute and possess with intent to distribute cocaine and marijuana between January 1992 and April 1993, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). These convictions arose out of a drug dealing conspiracy extending from Texas to New York City.
 
 
 8
 On appeal, Pedraza and Miller appeal from denials of their motions for a new trial based on the discovery after trial that a government witness committed perjury at trial. Pedraza also challenges the sufficiency of the evidence on all counts of his conviction, claims that the district court erred in computing his base offense level at sentencing, and argues that the district court erred in not departing downwardly based on unique family circumstances. Pedraza also incorporates relevant arguments raised by co-defendants. DiGiovanni asserts that the district court erred in admitting certain expert testimony, claims that the evidence supporting his convictions was insufficient, and argues that the district court improperly applied the sentencing guidelines for attributing cocaine to him. Miller additionally claims that his trial counsel rendered ineffective assistance and that his imprisonment violates the Eighth Amendment in light of his physical illness. We affirm.
 
 
 9
 After trial, the government discovered that Glynn Hewett committed perjury when he testified at trial concerning how much of the proceeds from the drug business remained at the time of his arrest and the source of the money he had used to begin a business in 1994. In denying the motions for a new trial, the district court found that the new evidence would not have affected the outcome even if introduced at trial. It correctly held that the evidence was cumulative impeachment evidence and that Hewett had been very effectively impeached at trial. He had, inter alia, been contradicted by two other witnesses as to the nature of threats Hewett had made against them. The district court also found that there was no basis to find that the government should have known at the time of trial about the perjury.
 
 
 10
 We agree with the district court. Hewett's testimony was not central to the case against either Pedraza or Miller, unlike in United States v. Wallach, 935 F.2d 445, 457 (2d Cir.1991), where the witness who turned out to have committed perjury was the only one of two main witnesses who was not discredited at trial as an acknowledged perjurer. In this case, the other evidence of guilt included, but was by no means limited to, Stella Sanchez's testimony against Pedraza and Lawrence Cockrum's testimony against Miller. Because the government was unaware of the perjury, "a new trial is warranted only if the testimony was material and 'the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.' " Wallach, 935 F.2d at 456 (quoting Sanders v. Sullivan, 863 F.2d 218, 226 (2d Cir.1988)); see also United States v. Sanchez, 969 F.2d 1409, 1413-14 (2d Cir.1992). The cumulative impeachment material in the context of the other evidence here would support no such belief.
 
 
 11
 Pedraza's challenge to the sufficiency of the evidence also fails. Pedraza must meet a heavy burden, because we must view the evidence in the light most favorable to the government and ask whether any rational jury could find the defendant guilty beyond a reasonable doubt. See, e.g., Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Pipola, 83 F.3d 556, 564 (2d Cir.), cert. denied, 117 S.Ct. 183 (1996); United States v. Giraldo, 80 F.3d 667, 673 (2d Cir.), cert. denied, 117 S.Ct. 135 (1996). In light of, inter alia, the testimony of Stella Sanchez about Pedraza's extensive involvement in the conspiracy, his telephone conversation of December 28, 1992, and the circumstances surrounding his arrest on an interstate bus while carrying approximately $138,000 in cash, a rational trier of fact would have no difficulty finding Pedraza guilty beyond a reasonable doubt.
 
 
 12
 Pedraza next argues that the district court erred in computing his base offense level. United States Sentencing Guidelines § 1B1.3 provides that, in cases of jointly undertaken criminal activity, relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Guidelines § 1B1.3(a)(1)(B); see also, e.g., United States v. Thompson, 76 F.3d 442, 455 (2d Cir.1996); United States v. Studley, 47 F.3d 569, 574 (2d Cir.1995). The district court's factual finding of a jointly undertaken criminal activity and such foreseeable acts and omissions is not to be overturned unless clearly erroneous. See, e.g., United States v. Rosa, 17 F.3d 1531, 1550 (2d Cir.) (citing 18 U.S.C. § 3742(e) and cases), cert. denied, 115 S.Ct. 211 (1994). To call for a base offense level of 38, the joint activity Pedraza participated in had to involve at least 150 kilograms of cocaine. United States Sentencing Guidelines § 2D1.1(a)(3). In the instant case, the district court adopted the findings of the Probation Department and concluded that Pedraza had agreed to the full scope of the activities of the Texas drug organization and that the organization distributed 10,000 to 15,000 kilograms of cocaine and 1,360 kilograms of marijuana. Although it is not clear whether the full scope of the estimate done in the Presentence Report rested on the "specific evidence" that would be required if the conduct in question were uncharged, see United States v. Shonubi, 103 F.3d 1085 (2d Cir.1997), the district court found that the conduct here was agreed to by Pedraza and was reasonably foreseeable to him. Moreover, component parts of the overall estimate rested on specific evidence that indicated quantities far in excess of 150 kilograms of cocaine; for example, Cockrum testified that he took at least 15 trips, each with 100 kilograms of cocaine. The district court's finding that the jointly undertaken activity embraced more than 150 kilograms of cocaine was, therefore, not clearly erroneous. Nor did the district court clearly err in its finding of foreseeable jointly undertaken activity. Pedraza's additional argument that these findings are inconsistent with a minor role in the overall Texas organization is without merit: there is no inconsistency in an agreement to play a minor role in a large conspiracy.
 
 
 13
 Pedraza finally argues that the district court erred in not granting him a downward departure based on his son's physical disabilities. Pedraza claims that the district court's refusal was clearly erroneous but does not argue that the district court did not understand that it had the authority to grant downward departures. Because the district court's refusal was not accompanied by any sign of a misapprehension as to its authority to depart downwardly, the refusal to grant a downward departure is not appealable. United States v. Brown, 98 F.3d 690, 694 (2d Cir.1996).
 
 
 14
 DiGiovanni argues that the district court erred in allowing DEA Special Agent James Kerrigan to testify that a voice on certain audio tapes was that of DiGiovanni and about drug prices and code language. Drug prices and code language can form the subject of expert testimony under Rule 702, Fed.R.Evid., see, e.g., United States v. Nersesian, 824 F.2d 1294, 1308 (2d Cir.), cert. denied, 484 U.S. 957 (1987); United States v. Cruz, 797 F.2d 90, 96 (2d Cir.1986); United States v. Ginsberg, 758 F.2d 823, 830 (2d Cir.1985), and the district court was not "manifestly erroneous" in using its broad discretion to decide that Agent Kerrigan qualified as an expert, see, e.g., United States v. Simmons, 923 F.2d 934, 946 (2d Cir.), cert. denied, 500 U.S. 919 (1991); United States v. Roldan-Zapata, 916 F.2d 795, 805 (2d Cir.1990), cert. denied, 499 U.S. 940 (1991); Nersesian, 824 F.2d at 1308; Cruz, 797 F.2d at 96. As to the voice identification, the testimony merely provided authentication or identification in accordance with Rule 901(a), Fed.R.Evid. In particular, Rule 901(b)(5) provides as an example of authentication or identification the "identification of a voice ... by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." The district court did not abuse its discretion in ruling that the tapes had been authenticated, see, e.g., United States v. Maldonado-Rivera, 922 F.2d 934, 957 (2d Cir.1990), cert. denied, 501 U.S. 1211 (1991); United States v. Mendel, 746 F.2d 155, 167 (2d Cir.1984), cert. denied, 469 U.S. 1213 (1985), and the question of the accuracy of the claimed identification was properly left to the jury, see United States v. Albergo, 539 F.2d 860, 863-64 (2d Cir.), cert. denied, 429 U.S. 1000 (1976). This conclusion is not undermined by the fact that Agent Kerrigan was cross-examined on the subject of Kerrigan's previous misattribution of co-defendant John Peretta's voice to DiGiovanni--and subsequent self-correction upon closer listening to the tapes.
 
 
 15
 Because the jury could find that it was DiGiovanni's voice on the tapes, his challenge to the sufficiency of the evidence has no merit.
 
 
 16
 DiGiovanni finally argues that 47 kilograms of cocaine were improperly attributed to him. However, based on the evidence, including that contained in the tapes, it was not clearly erroneous to count the 47 kilograms based on DiGiovanni's own conduct in attempting to retrieve a shipment containing that amount of cocaine. Citing United States v. Telesco, 962 F.2d 165 (2d Cir.1992), DiGiovanni also points to a government offer of a plea agreement under which the government would have agreed that 21 months imprisonment would be an appropriate sentence. In Telesco, the government had stipulated to the facts of the offense. 962 F.2d at 167-68. In contrast, here there were no factual stipulations in the offer, and the agreement envisioned that "[t]he parties agree that the Court and the Probation Department will be informed of all criminal activity engaged in by the defendant and known by the government, and that such information may be used to calculate the applicable Sentencing Guideline range." As in Telesco, any inaccuracy in the offer did not prejudice DiGiovanni because the offer contained a disclaimer, and, more importantly, because the offer was not binding on the court, see Telesco, 962 F.2d at 168, DiGiovanni not having accepted it.
 
 
 17
 In addition to his argument based on Hewett's perjury discussed supra, Miller makes the further claim that his trial counsel rendered ineffective assistance. Miller argues that his counsel failed to conduct pre-trial discovery, to raise any objections at trial, and to move to suppress an allegedly inaccurate proffer report which, Miller argues, was the sole reason he was prevented from testifying. We disagree. First, Miller fails to point to a single objection trial counsel should have made but did not. It is astonishing to suggest, as Miller seems to, that we adopt a rule that defense counsel will be deemed ineffective if he makes no objections whether or not there are meritorious objections to be made. Similarly, Miller makes no specific claims about what pre-trial discovery would have accomplished, a fatal gap in his argument given that the trial in question was Miller's second, the first having ended in a mistrial. As for the notes, because their admissibility would not have turned on their alleged unreliability, see United States v. Detrich, 865 F.2d 17, 21 (2d Cir.1988), there can be no error in not moving to suppress them as unreliable. And, in light of the evidence against Miller, nothing indicates that trial counsel's recommendation not to testify was unreasonable. See United States v. Vargas, 920 F.2d 167, 170 (2d Cir.1990), cert. denied, 502 U.S. 826 (1991). Finally, the district judge commented on the excellent and clever job done by Miller's counsel of cross-examining and discrediting Hewett. Miller's claim of ineffectiveness thus fails both prongs of the test for ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668 (1984).
 
 
 18
 Miller finally argues that his imprisonment violates the Eighth Amendment because of his physical illness. Miller received a substantial downward departure, from the Guidelines range of 188 to 235 months to the statutory minimum of 10 years. Miller does not appeal the extent of the departure but argues that the health facilities available to him render any continued confinement unconstitutional. This question is not properly before us on appeal from the sentence, because
 
 
 19
 [t]he Eighth Amendment is not a general grant to the federal courts of power to review sentences. Rather, it allows the review of the punishment specified by statute. Thus, we can review a claim that imprisonment for [a given crime] is cruel and unusual, or that imprisonment of [those committing that crime] violates the amendment, but not that a particular petitioner is deserving of mercy. Put another way, we are to review legislative choices, not abuses of judicial discretion.
 
 
 20
 Fielding v. LeFevre, 548 F.2d 1102, 1108 n. 12 (2d Cir.1977) (citing Gore v. United States, 357 U.S. 386, 393 (1958)).
 
 
 21
 We therefore affirm.
 
 
 
 *
 The Honorable Milton Pollack of the United States District Court for the Southern District of New York, sitting by designation